SAMUEL, Judge.
Plaintiff, a Lincoln-Mercury dealer for Ford Motor Company, filed this suit seeking $903.49 allegedly due by the defendant for service and repairs to his 1966 Lincoln automobile. The suit is based on two invoices, one dated July 25, 1968 for $187.88, and the other dated August 12,1968 for $715.61. The defendant answered denying liability and reconvened for damages on two grounds: (1) the repairs reflected by the second invoice in the amount of $715.61 were necessitated by and resulted from defective and faulty work previously done by plaintiff; and (2) the work done under that invoice was covered by a written warranty issued to the defendant by, and purchased by defendant from, the plaintiff and Ford Motor Company on December 8, 1967, which warranty was still in effect at the time the $715.61 repairs were made.
After trial there was judgment on the main demand in favor of the original defendant, dismissing the main demand, and judgment on the reconventional demand, in the amount of $204 for transportation charges incurred by defendant as a result of being deprived of the use of his car, in favor of plaintiff in reconvention, Holli-day. The original plaintiff, Clay-Dutton, Inc., has appealed. Hereinafter the original plaintiff and the original defendant will be referred to simply as “plaintiff” and “defendant”, respectively.
The evidence in the record consists of various documents and the testimony of four witnesses. Plaintiff called three of those witnesses: its service manager, credit manager and assistant manager of its used car department, and its shop foreman. The only witness for the defendant was the defendant himself. That evidence reveals the following pertinent facts:
Defendant purchased the used Lincoln from plaintiff during December, 1967. Thereafter he frequently had the car serviced and repaired by plaintiff; the record reflects eight such occasions including the last invoice dated August 12, 1968. In addition, on December 8, 1967 plaintiff inspected the vehicle in order to qualify the defendant for the Ford “Used Car Power Train Warranty” which forms the second basis of defendant’s denial of liability.
After leaving his automobile with the plaintiff for the work reflected in an invoice dated July 25, 1968, defendant did not pick up the vehicle until August 9, 1968 because he was out of town during all or a part of the intervening time. The following day, August 10, 1968, while defendant was driving the car from New Orleans towards Pearl River Louisiana, the engine overheated and burned, damaging it beyond repair and necessitating replacement of a short block assembly and other work shown on *722 the invoice dated August 12, 1968. The sole cause of the overheating of the engine and the resulting damage thereto was a ruptured water valve hose in the cooling system.
While it does appear that the warranty upon which defendant placed some reliance in the trial court excludes malfunctions of the cooling system and therefore does not cover the overheating of the engine, we find it unnecessary to decide that question. Quite clearly, the warranty imposes no obligations on the part of plaintiff to defendant because plaintiff is not a party to the document. Other than receiving the application for the warranty, inspecting the automobile' in connection therewith, and forwarding the findings and the application to Ford Motor Company, plaintiff had no connection with the contract. The warranty was issued only by Ford which is not a litigant in this proceeding, and Ford is the only party with any responsibility or liability for any claim under the contract. Defendant does not argue to the contrary.
In this court defendant’s only basis for denial of liability and for damages is that the overheating of the engine and the necessity for the extensive repairs reflected by the invoice of August 12, 1968 resulted from the fact that in servicing and repairing defendant’s car on occasions prior to that date, particularly on June 7, 1968, plaintiff failed to repair or replace the water valve hose which subsequently burst and caused the overheating and failed to warn defendant that the hose was defective and should be replaced with a new one. In this connection he relies on the rule, as expressed in Hayes v. Viola, La.App., 179 So. 2d 685, 688 and Smith v. Ponder, La.App., 169 So.2d 683, 684, that garagemen who represent themselves as having skill and expert knowledge in the repair of automobiles are under an obligation to warn their customers of any incidental danger of which they are cognizant due to their expert knowledge.
The nine invoices contained in the record appeared to be all of the occasions when the defendant had the car serviced or repaired by plaintiff. On each of those occasions the particular work defendant desired to have done was authorized by him over his signature on the invoice. On one occasion, December 5, 1967, a water pump was replaced and on another, May 14, 1968, a heater bypass hose was replaced. However, the work done on those two occasions was not in any way connected with the water valve hose in the cooling system which subsequently ruptured nor did it involve any circumstances under which plaintiff should have become aware of a possibility or probability that the water valve hose would burst. With only one exception this is also true as to all other occasions when plaintiff did work on the vehicle. That exception, upon which defendant now relies, was work authorized by the defendant and called for by the invoice dated June 7, 1968, the instructions on which were: “Check cooling system for leaks”.
Uncontradicted testimony in the record relative to the work done under the June 7, 1968 invoice, which testimony was given by plaintiff’s expert witnesses, is to the following effect: The proper and only method of checking the cooling system for leaks was to put the system under pressure beyond what is adequate to maintain cooling for the engine. Under such pressure defective hoses will leak. This method was used on June 7, 1968 and only one hose was found defective, a heater hose, which was replaced. The water valve hose which subsequently ruptured on August 10, 1968 showed no signs of being defective. It is quite possible for a hose, such as the hose which ruptured, to be in good condition on June 7, 1968 and yet, by reason of damage or deterioration, become defective and rupture sixty-four days later on August 10, 1968.
Thus, insofar as concerns the issue before us, the record shows plaintiff was not *723 guilty of performing defective or faulty work, and was not guilty of any negligence; there is no contrary evidence. On June 7, 1968 plaintiff did not know, and had no means of knowing, that the water valve hose would rupture or was in any way defective, if in fact a defect did exist at that time.
Defendant’s reconventional demand is based solely on allegations of defective and faulty work and clearly he bears the burden of proving those allegations. As the record is devoid of any evidence pertinent to that question other than the facts set forth above he has failed to carry this burden of proof and his reconventional demand must be denied.
As has been pointed out, defendant makes no complaint regarding the quality of the work done under the two invoices in suit and his only defense to plaintiff’s demand for payment thereof is the contention, relative solely to the invoice of August 12, 1968, that because the engine damage was caused by the plaintiff, the latter was obligated to repair the same without cost to the defendant. As we have found this contention to be without merit, plaintiff is entitled to the judgment it prays for.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that there be judgment, on the main demand, in favor of the plaintiff, Clay-Dutton, Inc., and against the defendant, Bill Holliday, in the full sum of $903.49, together will legal interest thereon from date of judical demand until paid, and that there be judgment, on the reconventional demand, in favor of the defendant in re-convention, Clay-Dutton, Inc., and against the plaintiff in reconvention, Bill Holliday, denying and dismissing said reconventional demand; all costs in both courts to be paid by the original defendant-appellee, Bill Holliday.
Reversed.