304 So.2d 695 (1974)
Godfrey PELTIER, Plaintiff-Appellee-Appellant,
v.
SEABIRD INDUSTRIES, INC. and Insurance Company of North America, Defendants-Appellants-Appellees, and
Edward A. Dauterive, Jr., d/b/a Dauterive's Marine Service and Employers' Liability Insurance Company, Defendants-Appellees.
No. 4791.
Court of Appeal of Louisiana, Third Circuit.
December 13, 1974.
Rehearing Denied January 9, 1975.
*696 Durrett, Hardin, Hunter, Dameron & Fritchie, by L. Michael Cooper, Baton Rouge, for defendant-appellant-appellee, Seabird.
Davidson, Meaux, Onebane & Donohoe, by Timothy J. McNamara, Lafayette, for defendant-appellant-appellee, Ins. Co. of N. A.
Pugh & Boudreaux, by Nicholls Pugh, Jr., Lafayette, for plaintiff-appellee-appellant.
Caffery, Duhe & Davis, by John M. Duhe, Jr., New Iberia, for defendants-appellees.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
*697 DOMENGEAUX, Judge.
This damage suit arises out of a boat fire which occurred on March 15, 1968. The plaintiff-owner of the boat brought this suit on March 13, 1969, under both warranty and tort against (a) the manufacturer of said boat (Seabird Industries, Inc.hereinafter referred to as Seabird), (b) Seabird's insurer (Insurance Company of North Americahereinafter referred to as INA), (c) the distributor and vendor of the boat (Edward A. Dauterive, Jr. d/b/a Dauterive's Marine Servicehereinafter referred to as Dauterive), and (d) the vendor's insurer (Employers Liability Insurance Corp.hereinafter referred to as Employers). Dauterive and Employers subsequently filed an exception of prescription to the action in warranty or redhibition, alleging that over one year had lapsed from the sale of the boat (November 20, 1967) and the last attempt to repair same (January or February, 1968) to the institution of this suit. The trial judge sustained this exception and on appeal we affirmed the holding at 243 So.2d 112 (La.App. 3rd Cir. 1971). Seabird and INA subsequently also filed an exception of prescription to that portion of plaintiff's suit alleging breach of warranty, which exception was referred to the merits. After a trial on the merits (on December 20-21, 1971) judgment was rendered in favor of the plaintiff and against Seabird in the total amount of $7,115.50 and against INA, as the insurer of Seabird, but limiting its liability to $650.00. Claims against Dauterive and Employers were denied. Subsequently the plaintiff appealed,[1] alleging essentially that Dauterive and its insurer should be held liable in solido with Seabird and INA and that INA's liability should not be limited to $650.00. Seabird and INA also appealed, denying any liability on their part and alleging the negligence of the plaintiff.
On November 20, 1967, Godfrey Peltier, a resident of Franklin, Louisiana, purchased a Seabird V-3 Supersport, in-board-outboard, boat from Dauterive's Marine Service in New Iberia, Louisiana. The total cost of the boat and trailer was $7,765.50.
Prior to the sale, the boat in question arrived in New Iberia where it was unloaded and checked out by a Mr. Gilman Braquet, an independent contractor hired by Dauterive. Mr. Braquet examined all new boats received by Dauterive for any defects, including any possible gas leaks. Mr. Braquet testified that in order to check for leaks approximately 10 gallons of gasoline would be put in the gas tank and the motor started. He, however, had no independent recollection of this particular boat, nor did he have any records regarding same.
After the aforementioned sale, the boat was delivered to the plaintiff's home and taken out for a test run for approximately thirty minutes in a nearby bayou. Several minor deficiencies such as missing knobs and defective door hinges were noted and as a result the boat was returned to Dauterive.
Several days later the boat was returned to Peltier who stated he subsequently used the boat in a short trip to Marsh Island. On this trip the plaintiff noticed a gas leak in one of the flexible rubber fuel lines near the gas tank and had Dauterive come to get the boat a second time.
Subsequently two of Dauterive's employees, Ned Rao and Pete Landry, examined the boat, found a leak in a rubber fuel line connecting the copper tubing fuel line to the fuel pump. The sending unit was also replaced at this time to repair the fuel gauge which was registering improperly. In this connection, Rao stated that he did not touch or tighten the copper fittings and connections on the copper tubing gas lines. Landry in turn testified at one point during the trial that he didn't remember tightening any of the copper fittings on the copper tubing gas line. The next day, however, Landry's memory seems to have *698 been rehabilitated and he testified forcefully that he tightened each of the fittings while the engine was running to insure they would not leak.[2] After these repairs were made, the record indicates that the front of the boat was raised, in order that gas would flow to the back of the gas tank to enable the mechanics to check for leaks. This procedure was followed immediately after the aforementioned repairs and again the next morning. Landry also testified that he started the motor to check for leaks, but that no leaks were found. The boat was returned to plaintiff some time in February, 1968, at which time Peltier indicated he looked to see if the fuel line had been changed.
According to the plaintiff, the boat was not used during the following three to four weeks and that on March 15, 1968, he was preparing the boat for a fishing trip when the fire occurred. On that date plaintiff testified he hooked the boat and trailer to his truck and backed it to a gravity-feed type gasoline tank in his yard where he filled the boat's 56 gallon tank. He stated that he knew the tank was full when gas started flowing out the overflow line, outside the boat.
Plaintiff then attempted to start the motor, but indicated the motor would not turn over and all that could be heard was a clicking sound. Thereafter Peltier raised the motor cover and noticed corrosion on the battery cables. He then walked to his house where he obtained some tools and returned to the boat, subsequently removing and cleaning the battery posts and cables. Upon replacing the cables and in the process of tightening the connecting bolts, plaintiff testified his wrench slipped, coming into contact with the top of the solenoid which resulted in a spark. The battery was approximately two to three feet from the gas tank and fuel lines leading thereto. A fire immediately erupted, resulting in the complete destruction of the boat, motor, and trailer.
Plaintiff testified that immediately prior to the fire he had checked the bilge and that it looked like it contained a little water with a few leaves mixed in. He stated that he did not see or smell gas at this time.
Peltier further testified that in the months following the fire he called Dauterive's a number of times requesting that they come out to examine the boat, to check for the causes of the fire, and to reimburse him for the loss of his boat. Finally, however, the plaintiff decided to consult an attorney, and hired a mechanic, Raymond Gauthier (who had been in the business of selling and repairing marine inboard and outboards for some 32 years) to examine the boat on September 18, 1968. Prior to that time plaintiff wrote a letter to the adjusting firms for the defendant-manufacturer and vendor, advising them that he had made arrangements for an examination of the boat at 2:00 P.M. on September 18, 1968, and requesting their presence for observing the examination.
Subsequently, on that date Raymond Gauthier testified he examined the charred remains of the boat in an attempt to determine the cause of the fire. At this time the record reveals he uncovered the copper tubing fuel line (under burned debris) connecting the motor to the gas tank and found two fittings at either end of the tubing loose or "finger tight". His testimony clearly indicates he felt these loose fittings likely caused gas leaks which resulted in the fire. He further opined the fittings would leak in the condition he found them if the tank were filled to the overflow line, thus causing pressure. Shortly thereafter, representatives for Seabird and INA showed up to examine the boat, but no one came to represent Dauterive or Employers. The only testimony regarding the examination by defendants' representatives present on this occasion, is that of the plaintiff who indicated these parties removed the *699 gas tank and filled it with water to check for leaks.
Thereafter plaintiff, in preparation for trial, hired a consulting civil engineer, A. H. Behling, who examined the boat in January, 1971, and also found the aforementioned fittings loose. He was of the opinion that if the tank were full, as testified to by the plaintiff, and the fittings were loose, it was likely that gas would leak into the bilge. He further indicated that the only way to make sure the lines would not leak was to completely fill the gas tank[3] and use hydrostatic pressure testing. Behling also conducted a demonstration with a torch at trial to illustrate his opinion that the fire would not have loosened the fittings.
At trial the defendants offered testimony of a Lafayette boat-dealer who indicated that the procedure used by Dauterive (running the motor) to test the boat's fuel line for leaks was the normal procedure used in the business for finding this type of problem.
In addition, a professional consulting engineer was called on behalf of the defendant who also indicated that running the boat engine should have revealed a leak, if one was present. He also testified that he had knowledge of situations where as a result of intense heat connections became loose.
The issues presented in this appeal are: (1) Whether the defendant-manufacturer (Seabird), the defendant-vendor (Dauterive), and their respective insurers (INA and Employers) are liable in solido for the property loss sustained by the plaintiff? (2) Whether the plaintiff was negligent or contributorily negligent under the circumstances? (3) If we conclude that INA is liable, whether its liability is excluded under its policy provisions to only $650.00.
It is well established in our jurisprudence that a manufacturer is presumed to know of any vice or defect in the thing he constructs. As a result, negligence is imputed to the manufacturer when personal injury or property damage results to the purchaser by reason of a vice or defect in the manufactured product. Spillers v. Montgomery Ward & Co., Inc., 294 So.2d 803 (La.1974); Tuminello v. Mawby, 220 La. 733, 57 So.2d 666 (1952); George v. Shreveport Cotton Oil Co., 114 La. 498, 38 So. 432 (1905); Brown v. Dauzat, 157 So. 2d 570 (La.App. 3rd Cir. 1963); Samaha v. Southern Rambler Sales, Inc., 146 So.2d 29 (La.App. 4th Cir. 1962); Johnson v. Hunter, 88 So.2d 467 (La.App. 2nd Cir. 1956).
The trial judge herein found the "vice or defect" to be the "finger tight" fittings which, according to a preponderance of the evidence, leaked gas when the plaintiff completely filled the boat gas tank, the gas subsequently becoming ignited when the wrench struck the solenoid. He further opined that somewhere in the Seabird plant, or where the motor was installed, that Seabird's employees failed to properly tighten the gas line fittings. In conclusion, the trial judge ruled that plaintiff's loss was due to shoddy workmanship or merchandise at Seabird's factory. We cannot say he was manifestly erroneous in this conclusion.
The liability of Dauterive, the vendor-retailer herein (aside from the question of warranty and redhibition which as aforementioned has prescribed) is, however, judged by a different standard than that of a manufacturer. See: Spillers v. Montgomery Ward & Co., Inc., supra; Gordon v. Bates-Crumley Chevrolet Co., 158 So. 223 (La.App. 2nd Cir. 1935), affirmed 182 La. 795, 162 So. 624 (1935); Ross v. John's Bargain Stores Corp., 464 F.2d 111 (5th Cir. 1972).
There is no rule of law in Louisiana which imputes to the seller of new *700 products (such as the boat herein or an automobile) knowledge of latent vices and defects, where the seller is not the manufacturer of the product. Nor is there an obligation to search for hidden defects, the duty of the vendor of such products being fulfilled if he performs the routine, normal inspections in the business upon receipt of the product, checking and discovering those defects which are patent and obvious. Gordon v. Bates-Crumley Chevrolet Co., supra; Simon v. Ford Motor Co., 256 So. 2d 725 (La.App. 1st Cir. 1971), affirmed in part and reversed in part on other grounds, 282 So.2d 126 (La. 1973); Clay-Dutton, Inc., v. Bill Holliday, 233 So.2d 720 (La. App. 4th Cir. 1970). In regard to other products, See: Penn v. Inferno Manuf. Corp., 199 So.2d 210 (La.App. 1st Cir. 1967), writ refused, 251 La. 27, 202 So.2d 649 (1967); Hurley v. J. C. Penney Co., 140 So.2d 445 (La.App. 1st Cir. 1962), cert. denied June 15, 1962; Boyd v. J. C. Penney Co., 195 So. 87 (La.App. 1st Cir. 1940).
Herein Dauterive was a vendor-retailer. No evidence is shown from which we can conclude that Dauterive or its employees knew or should have known that these fittings were loose. The record indicates that the standard and practice of the industry (at least at the dealership level) was to check for leaks by starting the boat engine and visual inspection thereafter. Dauterive's mechanics testified that this procedure was followed. Defendant-Dauterive's expert witness testified this is a proper procedure, although plaintiff's expert indicates otherwise.
Under these particular facts and circumstances the trial judge found no negligence on the part of Dauterive and concluded Dauterive was simply the distributor of a "package deal" or one piece transaction. We find no manifest error in this conclusion.
On the question of plaintiff's negligence, the trial judge emphasized that he was impressed with the sincerety and honesty of the plaintiff. The court further found that there was no negligence on the part of the plaintiff in his wrench accidently slipping and causing the spark. We find no error in this holding.
The final issue deals with the extent to which INA, Seabird's insurer, is liable to the plaintiff for the property damages sustained. INA sought to limit its liability to the sum of $650.00, representing the cost of the trailer, which was not part of the "package deal" between Seabird and Dauterive.
Within the insurance policy issued by INA to Seabird is the following exclusion clause:
"This insurance does not apply . . . (1) to property damage to the Named Insured's products arising out of such products or any part of such products;"
As pointed out by the able trial judge, the boat, motor, and appurtenances are "products" of the insured (Seabird) and under the exclusion, the policy does not apply to damage of these items. The trailer, however, was supplied by Dauterive, and therefore not a product of Seabird. As a result the trial judge was correct in limiting INA's liability to the cost of the trailer $650.00.
For the above and foregoing reasons the judgment of the trial court is affirmed. Costs of this appeal are assessed in equal portions to the plaintiffGodfrey Peltier, and the defendantsSeabird and INA.
Affirmed.
MILLER, J., dissents and assigns written reasons.
MILLER, Judge (dissenting).
I am at a loss to understand how defendant Edward A. Dauterive, Jr. d/b/a Dauterive's *701 Marine Service has been held to be free from fault. I also hold grave doubts concerning the holding that Seabird was negligent. Seabird was held for its failure to properly tighten two pipe fittings along the gas line which carried fuel from the tank to the carburetor. Dauterive checked for the same problem.
Dauterive testified at Tr. 311-2 that each new boat is checked for gas leaks before it is delivered to a customer. The routine for checking was carefully explained and verified by Mr. Braquet.
Peltier testified that he returned the boat to Dauterive three times. Tr. 84, 189-191, and 222-3. First, to replace knobs and hinges, and the second and third returns were for the express purpose of repairing gas leaks. After Peltier took the boat to Marsh Island, he called Dauterive and "told him to come get the boat, that it had gas leaks in it." Tr. 189. Next time he used the boat to go to "Horse Shoe Bayou", gas was "still leaking." Tr. 191. Peltier again telephoned Dauterive and asked him to fix the "gas leaks" and some other items. Tr. 192. The fire occurred when Peltier was filling the gasoline tank following Dauterive's last attempt to repair the gas leaks.
Dauterive's employee Landry specifically testified that he tightened each fitting from the tank to the carburetor when he repaired the gas leak. The trial court and now this court has rejected Landry's testimony. It seems to me that Landry has been found negligent, but somehow his employer was not.
I respectfully submit that Dauterive was negligent for failing to find the loose fittings on three specific occasions. First, when he checked the boat before it was delivered; second, when the boat was returned with complaints of gas leaks following the Marsh Island trip; and third, when the boat was returned with complaints of gas leaks following the Horse Shoe Bayou trip.
I respectfully dissent.
NOTES
[1] The appeal was lodged in this court on August 23, 1974.
[2] The trial judge indicated, however, that he was skeptical about this testimony and felt Landry's recollection was unreliable.
[3] The evidence indicates that the gas tank was initially filled with approximately 10 gallons by Braquet and no more added until the plaintiff did so on the date of the fire.