438 So.2d 215 (1983)
SOUTHWEST LOUISIANA GRAIN, INC., Plaintiff-Appellant-Appellee,
v.
HOWARD A. DUNCAN, INC., et al., Defendant-Appellant-Appellee.
No. 83-113.
Court of Appeal of Louisiana, Third Circuit.
August 11, 1983.
Rehearings Denied September 29, 1983.
Writs Denied November 18, 1983.
*217 Edwards, Stefanski & Barousse, Homer Ed Barousse, Jr., Crowley, for defendant-appellant.
Everett & Everett, Glennon P. Everett, Crowley, for plaintiff-appellee-appellant.
Marcantel & Marcantel, Bernard N. Marcantel, Jennings, Allen, Gooch & Bourgeois, William Parker and Arthur I. Robison, Voorhies & Labbe, W. Gerald Gaudet, Gary McGoffin, Hawley & Schexnayder, W. Paul Hawley, Onebane, Donahoe, Bernard, Torian, Diaz, McNamara & Abell, Robert Mahoney, Lafayette, Guglielmo & Lopez, James C. Lopez, Opelousas, Aaron, Aaron & Chambers, Noble M. Chambers, Crowley, for defendant-appellee.
Before STOKER, DOUCET and KNOLL, JJ.
STOKER, Judge.
This is breach of contract claim. The petition alleges that the contract obligated defendant, Howard A. Duncan, Inc. (Duncan), to design and build a grain elevator and storage facility for the plaintiff, Southwest Louisiana Grain, Inc. (Southwest). After completion of construction, the foundation of the grain elevator and storage facility began to crack and silos on the foundation became unstable and began to lean.

ISSUE
The issue in this appeal is whether the primary and excess liability insurers of Duncan are liable for any structural failure of plaintiff's property resulting from deficiencies or error in its design or construction.
The damages claimed are for property damage, loss of revenue because of failure to timely complete the work, and for further loss of revenue. Duncan's liability insurers are defendants in this case and were dismissed from the suit on motion for summary judgment. This appeal concerns the correctness of the dismissals.
Bituminous Fire & Marine Insurance Company provided Duncan with primary liability coverage and Houston General Insurance Company provided excess and umbrella coverage. These two insurers are the appellees. The appellants are the insured contractor, Duncan, and the owner, Southwest.
From the allegations of the petition as amended and from the arguments presented in all the briefs it is clear that what is at issue in this appeal is whether completed operations coverage exists under the two policies. The damage occurred after the plaintiff's facility was completed and apparently resulted when the facility was filled with grain. The original and supplemental and amending petitions are annexed to this opinion as Appendices I and II.

GENERAL PRINCIPLES GOVERNING CASE
In support of their motion for summary judgment the two appellee-insurers rely on *218 well-settled principles of insurance law to the effect that liability policies are not intended to serve as performance bonds. Breaux v. St. Paul Fire & Marine Ins. Co., 345 So.2d 204 (La.App. 3rd Cir.1977) and Vobill Homes, Inc. v. Hartford Accident & Indemnity Co., 179 So.2d 496 (La.App. 3rd Cir.1965), writ refused 248 La. 698, 181 So.2d 398 (1966), Vitenas v. Centanni, 381 So.2d 531 (La.App. 4th Cir.1980) and Peltier v. Seabird Industries, Inc., 304 So.2d 695 (La.App. 3rd Cir.1974), writ denied 309 So.2d 343 (La.1975). With the exception of the Vobill Homes case, these cases construed exclusions of coverage similar to certain exclusions contained in the policies involved here. The cases hold that liability policies containing such exclusions as were under consideration in those cases do not insure any obligation of the policy holder (contractor-builder or manufacturer) to repair or replace his own work or defective product.
The Vobill Homes case presented a different type of insurance policy exclusion from those involved here and in Breaux, Vitenas and Peltier. In Vobill Homes the policy excluded coverage for completed operations altogether. In contrast, the policies in the other cited cases, and those before us, do provide completed operations coverage but with certain exclusions. Therefore, the Vobill Homes case is not pertinent to our specific inquiry.

APPELLANTS' POSITION
Although completed operations coverage is involved here, the position of appellants is that the policies in question, that of Bituminous at least, present for consideration policy exclusion language different from that considered in the line of cases represented by Breaux, Vitenas and Peltier. Appellants also urge that there are ambiguities in the policies.

PROVISIONS OF THE POLICIES
In order to address appellants' arguments we first examine the policy provisions pertinent.
The general insuring agreement of the primary policy of Bituminous Fire & Marine Insurance Company (Bituminous) provides in part that:
"The company [Bituminous] will pay on behalf of the insured [Ducan] all sums which the insured shall become legally obligated to pay damages because of
A. bodily injury or
B. property damage
to which this insurance applies, caused by an occurrence ...."
Immediately following the above quoted provisions the policy lists the exclusions, those situations to which the insurance does not apply. The policy contains amendments and supplemental endorsements.
The insuring agreement must be read together with applicable exclusions. This is perhaps best illustrated in Vobill Homes, Inc. v. Hartford Accident & Indemnity Company, supra, written by Judge Albert Tate, while a member of this Court. That case, like the present case before us, dealt with a motion for summary judgment granted in favor of an insurer. Vobill Homes was sued in the principal demand by one Berge for defects in a house Vobill constructed for Berge. The defects, which included a defective or insufficient slab foundation, were alleged to have resulted from negligent acts or omission on the part of Vobill Homes. Vobill Homes sought through third party action to shift its liability to its manufacturer's and contractors' liability insurer, Hartford.
Judge Tate quoted the pertinent portion of Hartford's insuring clause. Through Judge Tate this Court then held there was no coverage by reason of specific exclusion of completed operations coverage. This principle is also illustrated by the Breaux case, cited above, written by Justice Watson while he was a judge of this Court. Despite the holdings in the cases cited and relied upon by Bituminous and Houston, we are confronted with policy provisions not involved in those cases. Therefore, we must consider the effect of those provisions and the case may not be decided solely on the basis of the Breaux line of cases.
*219 In the original briefs filed with this Court, all parties appeared to agree that the applicable policy exclusions in the two policies are as set forth below.
The exclusions in the primary liability policy of Bituminous Fire & Marine Insurance Company on which that company relies read as follows:
"Exclusions
This insurance does not apply:
* * * * * *
(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from
(1) a delay in or lack of performance by or on behalf of the named insured or any contract or agreement, or
(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured;
but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured;
(n) to property damage to the named insured's products arising out of such products or any part of such products;
(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts, or equipment furnished in connection therewith;
* * *"
In supplemental provisions contained in Endorsement No. 8 to the policy the following exclusion appears:
"(z) with respect to the completed operations hazard, to property damage to work performed by the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."
(With respect to the Bituminous policy, Southwest urges in a supplemental brief that exclusion "o" was eliminated. Southwest contends that Endorsement No. 8, to be discussed later, replaced exclusion "o" with an exclusion designated "x" which in turn was replaced by exclusion "z" set forth above. Southwest further contends that this process of amendment and substitution had the effect of providing coverage to Duncan for property damage performed on behalf of Duncan as the named insured by subcontractors.)
The exclusions of the excess liability policy of Houston General Insurance Company on which that company relies read as follows:
"This policy does not apply:
* * * * * *
(d) to Property Damage to
(1) goods or products (including any container thereof) manufactured, sold, handled or distributed by the named insured, or by others trading under his name, or premises alienated by the named insured, arising out of such goods, products or premises or any part of such goods, products or premises; or
(2) work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;
(e) to such part of any damages or expense which represents the cost of inspecting, repairing, replacing, removing, recovering, withdrawing from use or loss of use of, because of any known or suspected defect or deficiency therein, any
(1) goods or products or any part thereof (including any container) manufactured, sold, handled or distributed by the named insured, or by others trading under his name; or
(2) work completed by or for the named insured; or other property of which such goods, products or work *220 completed are a competent part or ingredient;
* * *"

APPELLANTS' INITIAL ARGUMENTS
From the advance premiums noted in the Bituminous policy contract (Tr. 58-59), the policy covered comprehensive general liability insurance, independent contractors insurance, completed operations and products insurance. The appellants in their brief seem to suggest that there may be some question as to whether the policies do in fact provide completed operations insurance coverage. However, the insurers, Bituminous and Houston General, make no disclaimer in this regard. (Although the Bituminous policy is in some respects not clear on this point, we conclude that the policy does include coverage for completed operations hazard or products hazard. We make this conclusion despite the apparent exclusion of these coverages in Bituminous Endorsement No. 2 to the policy. This is because we conclude that Bituminous Endorsement No. 8 does provide completed operations coverage. In this connection we note that the Bituminous endorsements appear to have been written at the same time as the policy and date from the same date, October 1, 1979.)
Southwest contends that completed operations coverage is afforded only through Endorsement 8 and that there are no exclusions in the endorsement itself. Therefore, Southwest reasons that the exclusions listed above in the Bituminous policy, which appear in the basic policy, do not apply to Endorsement No. 8. We find these contentions of Southwest to be without merit for the following reasons.
The basic Bituminous policy was issued for the period October 1, 1979 to October 1, 1980. Endorsement 8 was made effective at the same time as the basic policy.
Endorsement No. 8 to the Bituminous policy bears the title heading SUPPLEMENTAL MISCELLANEOUS LIABILITY (Contractors Form). This endorsement provides broad form property damage coverage and is available either with or without completed operations coverage. If completed operations coverage is to be included, the election and agreement to include it must be specifically indicated by checking a box on the form indicating the selection of this option. The following provision is provided in Endorsement No. 8:
"This endorsement is effective from October 1, 1979, at 12:01 a.m. Standard Time at the named insured's address, and subject to all exclusions, conditions and other terms of the policy except as specifically amended herein, forms a part of policy No. GL 1 151 536 issued to (1) Howard A. Duncan, Inc. (See End. # 1)" (Emphasis supplied.)
By this language Endorsement No. 8 specifically incorporated all those exclusions set forth in the basic policy.
Endorsement No. 8 further states:
"In consideration of the payment of the premiums stated in the Comprehensive General Liability Insurance schedule as applicable to this endorsement, it is agreed that the insurance is amended to include the coverage amendments and additions described in the Coverage Section of this endorsement subject to the following provisions. * * * *"
Endorsement No. 8 provides a number of types of insurance coverage. Broad form property damage (BFPD) coverage is only one of the types of insurance provided. As noted above BFPD coverage is available in two forms. (Tr 70). If BFPD coverage excluding completed operations coverage is selected, the following language (Tr. 72) relating to exclusion of coverage applies:
"1. The exclusions relating to property damage to (1) property owned, occupied or used by or rented to the insured or in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control and (2) work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith, are replaced by the following exclusions (w) and (x):

*221 "(w) to property damage * * *
"(x) with respect to the completed operations hazard, to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."
As a result of this quoted language exclusion "o" in the basic (GCGL) policy is replaced by exclusion "x." However, the two exclusions read the same; therefore no change is effected except for the letter designation of the exclusion. These exclusions are sometimes referred to as the "work product exclusion." Breaux v. St. Paul Fire & Marine Ins. Co., supra and Southwest Forest Industries, Inc. v. Pole Building, Inc., 478 F.2d 185 (9th Cir.1973).
The policy written by Bituminous in favor of Duncan included completed operations coverage by reason of the checking of the appropriate box indicating selection of that optional coverage, i.e., BROAD FORM PROPERTY DAMAGE COVERAGE (Including Completed Operations). See Tr. 70. Following the box containing the check, the following language is printed and applies to Duncan's Bituminous policy:
"An `X' in this box means that the Broad Form Property Damage coverage is amended as follows:
1. The title is amended as stated above.
2. Exclusion (x) is replaced by the following exclusion (z):
(z) with respect to the completed operations hazard, to property damage to work performed by the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.
* * *"
Inasmuch as exclusion (x) replaced the original exclusion "o," the latter forms no part of the Bituminous policy. However, exclusion "x" applies only to broad form property damage (BFPD) coverage which excludes completed operations. Selection of the option provision of BFPD coverage to include completed operations resulted in replacement of exclusion "x" with exclusion "z."
Comparison of exclusion "x" and "z" discloses that exclusion "z" omits the words "or on behalf of" which appear in exclusion "x." In a supplemental brief filed by Southwest with this Court on the day of oral argument, that appellant contends that the language difference between exclusion "x" and exclusion "z" resulted in including coverage for liability incurred through subcontractors. Southwest then suggests that the only work not subcontracted by Howard Duncan, Inc. was the pouring of the concrete slab and underlying pilings, and further that the engineering work and subsoil testing were subcontracted. Therefore, Southwest concludes that Duncan is liable for work done by subcontractors, and coverage is afforded for such liability by the Bituminous policy.
This position taken by Southwest is supported by writers and authorities in the field of insurance: See Jack P. Gibson, Broad Form Property Damage Coverage Analysis, Application and Alternatives, Second Edition, Dallas, Texas, International Risk Management Institute, Inc., 1981; The Fire Casualty & Surety Bulletins (FC & S Bulletins), Casualty Surety Volume, Subject: Public Liability, 1981, pages A-14, Bf 1 and Epb-Epba 1; David M. Sanborn, "Workmanship Exclusion," Independent Agent, (February, 1979), 35-36; David M. Sanborn, "Workmanship Exclusions2," Independent Agent (March, 1979) 29-35 and David M. Sanborn, "Workmanship Exclusion3," Independent Agent, (April, 1979) 49-53.
Bituminous and Houston General have both chosen to answer the argument set forth by Southwest in its supplemental brief by assuming the correctness of Southwest's postulate outlined above. Bituminous urges that the pertinent "work performed on behalf of the named insured" in this case consisted of engineering services and subsoil testing. Bituminous urges that since the engineering services and subsoil testing constituted the "work performed" on behalf of the insured, Duncan, we must *222 then take into consideration that no damage was sustained by these engineering services or the subsoil testing. This work was in the nature of services and not susceptible of being damaged. Therefore, so Bituminous contends, "the work" performed by these subcontractors has not been damaged.
Houston General argues that the insurance in question does not insure the cause of the damage, only what was actually damaged. In this case, so Houston General urges, any damage sustained by the grain storage facility and its foundation when it was loaded with grain resulted from sinking caused by the failure of the soil underlying the slab of the structure to withstand the pressure when the facility was put to use. In its supplemental brief Houston states: "This argument is simply another way that the appellants are trying to demonstrate that the cause of the damage somehow renders ineffective the exclusion relative to work product. In short, the appellant [Southwest] is saying that perhaps the fault of a subcontractor caused the damage to the grain elevator, and thus the exclusion does not apply. This argument is obviously fallacious. As stated at oral argument and in previous briefs on behalf of Houston General, the policy does not address what caused the damage, but only what was actually damaged. Here there is no question but that the work product of Howard Duncan has been damaged. The subsoil contractor's `work' has not been damaged and is not sued upon in this case; the drawings or designs of any subcontractor architect have not been damaged in this matter, and are not actually the work which is being sued upon. Damage is to the grain elevator which was built by Howard Duncan; the fact that the Bituminous endorsement may leave out the language `or on behalf of the named insured' is of no moment in determining what has been damaged, but only determining what caused the damage. This is not relevant to our inquiry."
Houston General further points out that the supplemental brief of Southwest does not even mention the Houston General policy. Houston General urges that this is because its policy contains exclusion (d)(2) which states "This policy does not apply ... (d) to Property Damage to ... (2) work performed by or on behalf of the named insured arising out of the work or any portion thereof ...." (Emphasis supplied) Thus, Houston General urges that its policy covers neither damaged work of insured contractors nor their subcontractors.
Houston General sets forth other arguments based on its assertion that its policy is not merely an excess insurance policy, but is an umbrella policy as well, which contains applicable exclusions.
On its behalf Bituminous further urges that irrespective of the argument surrounding exclusion "x," the other exclusions remaining should not be disregarded and should be given effect. Particularly, Bituminous refers to exclusion "n" which specifically excludes property damage to the named insured's product. In the event that this should be found to be true, it would raise questions of ambiguity inasmuch as two provisions of the policy would be in conflict. There is an apparent conflict between the provisions of exclusion "n" and exclusion "z" if the term "product" in exclusion "n" applies to a building or any part of a building. One seems to exclude work performed by both the insured and subcontractors. The other appears to exclude only work performed by the insured, thus indicating coverage of subcontractors. Such an ambiguity would be construed in favor of the insured. Lee v. Liberty Mutual Ins. Co., 387 So.2d 621 (La.App. 4th Cir.1980).
At this point we consider the argument on behalf of appellants that exclusions do not extend coverage. This argument might be pertinent if we were confronted solely with the effect of replacement of exclusions "o" and "x" by exclusion "z." However, the extension of coverage is found in connexity between the basic CGL policy language insuring Duncan's liability and Endorsement No. 8 which extends broad form property damage coverage. Clearly coverage was extended as modified by exclusion "z." At this point in our resolution of the *223 issue, exclusions "o" and "x" have passed out of the picture. They are significant only as a factor in the history of the change which has resulted in a less restrictive exclusion represented by "z."

PRELIMINARY CONCLUSIONS
For the sake of clarity, we will recapitulate at this point the conclusions we have reached thus far.
1. The policy of Bituminous provided completed operations coverage and the policy of Houston General did also.
2. The Broad Form Property Damage coverage provided by Bituminous included completed operations coverage.
3. The completed operations coverage under the BFPD coverage was subject to all the exclusions stated in the basic comprehensive liability policy subject to the substitution of exclusion "z" in place of "o."
4. Exclusion "z," with respect to the completed operations hazard, does not exclude coverage for property damage to work performed on behalf of the named insured arising out of the work.
5. Exclusion "z" and exclusion "n" are in conflict if a building or its component parts are to be considered a "product" as that term is employed in exclusion "n." Under the circumstances, exclusion "z" must prevail over exclusion "n." If a building should not be deemed a "product" it would not apply here at all.
6. Based on the above, the Bituminous policy, at least provided completed operations coverage for property damage to work performed for the insured, Duncan, by subcontractors.

CONCLUSIONS WITH REFERENCE TO BITUMINOUS
At this point, we are concerned with the exclusion or non-exclusion of coverage for "property damage to work performed ... arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith." Regardless of who may have performed the work, "the work" in the context of the exclusionary language in question must evidently be work of a tangible nature capable of being damaged. This conclusion is fortified by the addition of the words which follow the words "the work." The provision applies not only to "the work," but also to property damage arising out of "any portion thereof" and further "out of materials, parts or equipment furnished in connection therewith."
From the above we conclude that "work performed" affected by exclusion "z" of completed operations coverage must necessarily form part of the permanent, tangible, visible structure and exist in concrete form. Otherwise, any work which may be in question would not be susceptible of sustaining damage. For example, a surveyor might be engaged to locate a building on a given area of ground, to stake it out and to establish levels for the foundation and slab surface. If the surveyor mislocates the building or in misshapen form or sets the guides for levels incorrectly, the ultimate construction will contain errors and deficiencies. The contractor will be liable for these and will have to answer to the owner-contractor. While the surveyor's work was essential to the construction, his work is a service which itself does not remain or persist in permanent, tangible or visible form, and the survey work is merely reflected in the work performed by the contractor or a subcontractor who follows the temporary stakes and guidelines set up by the surveyor. When the surveyor moves off the construction site, he leaves nothing which may be damaged.
We conclude that damage to some thing is essential to bring exclusion "z" into play.
For the foregoing reasons, we conclude that service consisting of soil testing or engineering advice and design would hardly qualify as "work performed" within the meaning of exclusion "z" of the Bituminous policy. The soil tester and engineer did not fabricate any part of the tangible work which sustained damage which is the measure of Duncan's liability to Southwest. *224 We now pass to subcontracted construction work.
What we have said has no effect on any liability the soil tester and engineer may owe to Duncan which relied on their services.
Ultimately, in construing the Bituminous policy we hold that there is no completed operations coverage for work performed by Duncan itself (the insured). This result is dictated by cases represented by Breaux, Vitenas and Peltier. These cases construed an all-embracing type exclusion such as "o" which is the same as "x." Contrariwise, the damage to all portions of the work on the structure performed by subcontractors will be covered. This result obtains because exclusion "z" retains the exclusion for property damage to work performed by the insured arising out of the work but eliminates it as to damage to work performed on behalf of the insured. Such a result should obtain even if Duncan's work (assuming it built the foundation) was performed in a workmanlike manner and failed only because of the condition of the subsoil. In summary, if subcontractor's work sustained damage attributable to an unstable foundation, the subcontracted work should be covered because it is not excluded by exclusion "z."
The petition of Southwest alleges that part of the construction to be performed was subcontracted. In Southwest's supplemental brief it makes the following assertions:
"Although Howard Duncan, Inc. was the general contractor for the construction of the grain elevator for Southwest Louisiana Grain, the only work not subcontracted was the pouring of the concrete slab and underlying pilings. The engineering work and sub-soil testing was subcontracted and it is evident from all the discovery taken up to the present that the sub-soil is not sufficient to support the facility. At this point it appears that Duncan, Inc., is liable for work done by sub-contractors and coverage is afforded for such liability by the Bituminous policy."
In addition to the assertion just quoted, plaintiff's petition alleges that certain work was performed through subcontractors. As the appellee insurers were dismissed through motion for summary judgment, it is not established precisely what Duncan as the general contractor did and what any subcontractors may have done.
From the foregoing, it is clear that genuine issues of material fact exist as to what work Duncan may have performed and what subcontractors may have performed. Also, the monetary value or damages sustained by work performed by subcontractors is an issue of fact which must be established through trial. For these reasons, the summary judgment in favor of Bituminous must be reversed and the case remanded as to it.
Thus far we have not discussed exclusion "m" of the Bituminous policy, although Bituminous maintains in its original brief that it applies. However, beyond including this exclusion among the other exclusions quoted as relied upon, there is no discussion of the exclusion. We make no comment on this exclusion other than to point out that it relates "to loss of use of tangible property which has not been physically injured or destroyed ..." (Emphasis supplied). Also, the exclusion contains its own exclusion. In view of the fact that none of the parties have attempted to relate this exclusion to any facts alleged in plaintiff's petition as amended or any other items which may be considered on motion for summary judgment, we find nothing to consider involving this exclusion.

CONCLUSIONS WITH REFERENCE TO HOUSTON GENERAL
We conclude that the motion for summary judgment granted in favor of Houston General was proper. Unlike the Bituminous policy, the Houston General policy does not contain an exclusion of the type represented by exclusion "z." Rather, Houston General's exclusions include language of the type represented by exclusions "o" and "x." Therefore, the completed operations *225 coverage afforded by Houston General excludes any damages for defective work or product performed either by Duncan or any of its subcontractors. The language also excludes loss of use claims resulting from work performed by or on behalf of the named insured.
Houston General's policy is a separate policy. It is in no way tied to the Bituminous policy except, as broadly provided, that it is excess over the limits of the Bituminous policy. Otherwise, Houston General's contractual obligation is governed by its own terms. It does not in any way import into its contract terms any portion of the Bituminous policy. It contains its own insuring agreement, definitions, exclusions and other usual provisions. Therefore, Houston General's own exclusions apply to Houston General's obligation. None of the exclusions of the Bituminous policy apply to Houston General's obligation.
Under the circumstances, Houston General is entitled to be dismissed from this case under Breaux v. St. Paul Fire & Marine Ins. Co., supra, Vitenas v. Centanni, supra; Peltier v. Seabird Industries, Inc., supra; Superior Steel, Inc. v. Bituminous Cas. Corp., 415 So.2d 354 (La.App. 1st Cir.1982) and Old River Terminal Co-op v. Davco Corporation of Tennessee, et al., 431 So.2d 1068 (La.App. 1st Cir.1983).
For the reasons given above, the judgment of the trial court dismissing this action as to Bituminous Fire & Marine Insurance Company is reversed and set aside. The judgment dismissing Houston General Insurance Company is affirmed both as to the principal and incidental demands. The costs of this appeal are assessed to Bituminous Fire & Marine Insurance Company.
REVERSED IN PART AND REMANDED, AFFIRMED IN PART.
 APPENDIX I
 SOUTHWEST LOUISIANA : 15TH JUDICIAL DISTRICT COURT
 GRAIN, INC.
 VS. NO. 47,895 : PARISH OF ACADIA
 HOWARD A. DUNCAN, INC.
 ET AL : STATE OF LOUISIANA

PETITION IN SUIT FOR DAMAGES
TO THE HONORABLE, THE FIFTEENTH JUDICIAL DISTRICT COURT, IN AND FOR THE PARISH OF ACADIA, STATE OF LOUISIANA:
The petition of SOUTHWEST LOUISIANA GRAIN, INC., a domestic corporation domiciled in Acadia Parish, Louisiana, with respect represents:
1.
(a) HOWARD A. DUNCAN, INC., a domestic corporation domiciled in Acadia Parish, Louisiana, having as its registered agent for the service of process Mr. Howard D. Duncan, 111 East Mill Street, Crowley, Louisiana;
(b) SOLLAY-BAKER FOUNDATIONS, INC., a domestic corporation domiciled in Jefferson Davis Parish, Louisiana, having as its agents for the service of process Mr. Edwin K. Hunter and Mr. J.A. Delafield, 901 Lakeshore Drive, Lake Charles, Louisiana 70601;
(c) ROBERT A. CLEVELAND, a major resident of Lafayette Parish, Louisiana, 336 Elizabeth Street, Lafayette, Louisiana 70501;
(d) MEMPHIS CONCRETE & SILO COMPANY, INC., a foreign corporation doing business in the State of Louisiana, having as its registered agent for the service of process Ben Miller, Jr., 401 North Boulevard, Baton Rouge, Louisiana 70821;
(e) GREEN'S HARDWARE & MACHINERY COMPANY, a domestic corporation domiciled in Acadia Parish, Louisiana, whose agents for the service of *226 process are Murphy J. Green, 424 East First Street, Crowley, Louisiana, and Noble M. Chambers, Court Circle, Crowley, Louisiana;
(f) BITUMINOUS FIRE & MARINE INSURANCE COMPANY, a foreign corporation doing business in the State of Louisiana, having as its agent for the service of process the Secretary of State of the State of Louisiana;
(g) MISSION INSURANCE COMPANY, a foreign corporation domiciled in California, doing business in the State of Louisiana, having as its agent for the service of process the Secretary of State of the State of Louisiana;
(h) HOUSTON GENERAL INSURANCE COMPANY, a foreign corporation doing business in the State of Louisiana, having as its agent for the service of process the Secretary of State of the State of Louisiana.

2.
At all times pertinent hereto Bituminous Fire & Marine Insurance Company, Mission Insurance Company and Houston General Insurance Company were insurers of Howard A. Duncan, Inc., for all losses incurred by petitioner.

3.
On April 18, 1978, petitioner and defendant Howard A. Duncan, Inc., entered into a standard form contract wherein it was agreed that Howard A. Duncan, Inc., would design and build a grain elevator and storage facility on the Mermentau River at Mermentau, Acadia Parish, Louisiana.

4.
Upon information and belief defendant Howard A. Duncan, Inc., sub-contracted with Sollay-Baker Foundations, Inc., to perform certain work on the foundation; defendant Robert A. Cleveland was the project engineer selected; defendant Memphis Concrete & Silo Company constructed the concrete silos; defendant Green's Hardware & Machinery Company of Crowley provided the machinery.

5.
Through no fault of petitioner the facility was not completed until October, 1980, causing significant loss of revenue and other damages to petitioner which will be itemized below.

6.
Since completion, severe and serious problems with the foundation and with differential settlement of up to two feet have occurred with serious consequences. The following non-exclusive particulars have occurred:
(a) Four silos have become completely unusable and will need to be demolished and rebuilt;
(b) The structural integrity of the loading structures is zero and must be replaced;
(c) Unsafe conditions exist on the catwalk above the silos;
(d) All the silos are now out of plumb and all related equipment attached thereto has been rendered useless due to misalignment side effects; and
(e) All screw conveyors have been rendered inoperative.

7.
All problems above noted will continue to worsen until the foundation is stabilized and repairs affected, if this is possible. Upon information and belief, it is not, and demolition is inevitable.

8.
Including but not limited to the foundation, good grain elevator design and/or building practices were not followed during the course of engineering and construction of the entire facility.

9.
Defendants have breached their obligation to perform in a good workmanlike manner free from defects attributable to faulty materials and/or poor workmanship. They have not exercised skillful diligence and careful work practices in the following non-exclusive particulars:

*227 (a) Insufficient soil testing was done to determine what construction was needed to ensure a solid, safe foundation;
(b) The foundation pilings were not constructed to the specifications noted in the contract;
(c) The foundation plans themselves were inadequate; and
(d) The construction of the foundation and underground pilings was not done in a workmanlike manner.

10.
Upon information and belief defendants Howard A. Duncan, Inc., and Green's Hardware & Machinery Company have installed equipment of different types, sizes and quality than originally specified, including the grain cleaner system, the grain dryer system, the lower shipping conveyor and the barge loading system, which resulted in a facility incapable of operating at a capacity required and requested by petitioner, all in violation of their contract.

11.
Petitioner is entitled to attorney's fees and expert witness fees in addition to the damages itemized below.

12.
As a result of the breach of contract and warranty of fitness, and under Civil Code Articles 2762, 2769 and others not enumerated, Howard A. Duncan, Inc., and its sub-contractors, petitioner has suffered the following damages:

(a) Loss of income as a result of
 the late completion $ 750,000.00
(b) Cost of attempted correction
 and repairs already expended 120,000.00
(c) Cost of replacement machinery
 and equipment 250,000.00
(d) Demolition cost 750,000.00
(e) Replacement cost and cost of
 rebuilding and repair 4,000,000.00
(f) Future loss of income 3,500,000.00
(g) General damages 2,000,000.00
 --------------
 TOTAL $11,370,000.00

13.
Petitioner is entitled to and does hereby request the matter be tried before a jury.
WHEREFORE, petitioner prays that after all legal delays and due proceedings had there be judgment herein in his favor and against the defendants, Howard A. Duncan, Inc., Sollay-Baker Foundations, Inc., Robert A. Cleveland, Memphis Concrete & Silo Company, Inc., Green's Hardware & Machinery Company, Bituminous Fire & Marine Insurance Company, Mission Insurance Company and Houston General Insurance Company, in the full sum of ELEVEN MILLION THREE HUNDRED SEVENTY THOUSAND AND NO/100 ($11,370,000.00) DOLLARS, together with legal interest from date of judicial demand, until paid, and for all costs of these proceedings.
Petitioner further prays that this matter be heard before a jury.
 By its attorneys,
 EVERETT & EVERETT
 BY: Glennon P. Everett
 GLENNON P. EVERETT
 Post Office Box 44
 Crowley, Louisiana 70526

ORDER
Considering the above, it is
ORDERED that plaintiff be granted a trial by jury and a bond for costs be set at $2000/00.
 Signed this 21st day of April, 1981.
 /s/G. Bradford Ware
 DISTRICT JUDGE
*228
 APPENDIX II
 SOUTHWEST LOUISIANA : 15TH JUDICIAL DISTRICT COURT
 GRAIN, INC.
 VS. NO. 47,895 : PARISH OF ACADIA
 HOWARD A. DUNCAN, INC.,
 ET AL : STATE OF LOUISIANA

AMENDED PETITION
TO THE HONORABLE, THE FIFTEENTH JUDICIAL DISTRICT COURT, IN AND FOR THE PARISH OF ACADIA, STATE OF LOUISIANA:
The amended petition of SOUTHWEST LOUISIANA GRAIN, INC., through undersigned counsel, with respect represents:

1.
Petitioner wishes to amend its original petition to make Louisiana Testing & Inspection, Inc., a party defendant. Accordingly, the original petition is amended so as to add the following item to Paragraph 1:
"(i) LOUISIANA TESTING & INSPECTION, INC., a domestic corporation, having as its registered agent for the service of process Mr. Harry R. Smith, 1202 Oak Lawn, Lafayette, Louisiana 70501."

2.
Petitioner wishes to amend the original petition so as to add an additional paragraph thereto, to read as follows:
"4 A.
Defendant, Louisiana Testing & Inspection, Inc., made a sub soil foundation investigation at the construction site at the request of Howard A. Duncan, Inc. Upon information and belief Robert A. Cleveland was employed by Louisiana Testing & Inspection, Inc., at this time and relied on Louisiana Testing's findings in making his foundation recommendations.

3.
Petitioner wishes to amend Paragraph 5 of the original petition so as to make that paragraph read as follows:
"5.
Through no fault of petitioner the facility was not completed until November, 1979, causing significant loss of revenue and other damages to petitioner which will be itemized below."

4.
Petitioner reiterates all of the allegations, as amended above, of its original petition.
WHEREFORE, petitioner prays that defendant Louisiana Testing & Inspection, Inc. be served with a copy of this petition as provided by law, and that after all legal delays and due proceedings had there be judgment in its favor as prayed for in the original petition.
 By its attorneys,
 EVERETT & EVERETT
 BY: Glennon P. Everett
 GLENNON P. EVERETT
 Post Office Box 44
 Crowley, Louisiana 70526

CERTIFICATE
I HEREBY CERTIFY that copies of the above and foregoing amended petition were this day mailed to all counsel of record in this cause, postage prepaid and properly addressed.
Crowley, Louisiana, this 27th day of May, 1981.
 s/Glennon P. Everett
 GLENNON P. EVERETT