**KNUTSON CONSTRUCTION COMPANY, Appellant,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, et al., United States Fire Insurance Company, Northbrook Excess and Surplus Insurance Company, Respondents,**

**Integrity Insurance Company, New England Reinsurance Corporation, Defendants.**

No. C9–84–1253.

Court of Appeals of Minnesota.

May 7, 1985.

John R. Rode, Carlsen, Greiner & Law, Minneapolis, for Knutson Const. Co.

Timothy P. Tobin, Gislason, Dosland, Hunter & Malecki, Minnetonka, for St. Paul Fire and Marine Ins. Co.

Mark W. Gehan, Jr., Collins, Buckley, Sauntry & Haugh, St. Paul, for U.S. Fire Ins. Co.

Robert J. McGuire, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, for Northbrook Excess and Surplus Ins. Co.

Timothy W. Waldeck, Foster, Waldeck & Lind, Minneapolis, for Integrity Ins. Co.

Jay L. Bennett, Dunkley & Bennett, Minneapolis, for New England Reinsurance Corp.

Leonard W. Glewwe, A. Patrick Leighton, Moore, Costello & Hart, St. Paul, for amicus curiae Associated Contractors of Minnesota.

Heard, considered, and decided by HUSPENI, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

HUSPENI, Judge.

Appellant Knutson Construction Co. (Knutson) brought an action seeking a declaratory judgment that respondents St. Paul Fire and Marine Insurance Co. (Fire & Marine), St. Paul Mercury Insurance Co. (Mercury), and U.S. Fire Insurance Co. (U.S.) must defend and indemnify it in a pending action. The district court granted summary judgment in favor of Fire & Marine, Mercury, and U.S. Knutson appeals. We affirm.

## FACTS

Knutson served as a contractor for Rivergate Apartments, a project for the elderly located in Minneapolis. Construction of the Rivergate project began in 1973 and was completed in 1975. Defects in construction were allegedly discovered and two lawsuits were commenced against Knutson and others. These lawsuits have been consolidated and are pending.

According to the amended complaint, an excessive number of cracks, reddish brown staining, and spalling (chipping) were discovered in the brick exterior of the Rivergate building in the winter of 1979–1980, more than four years after the building was first occupied. Since completion of the building, problems with the heating and air conditioning systems have allegedly been discovered. In addition, the windows fail to seal out air and moisture and do not open and close properly.

The brick exterior of the Rivergate building as originally constructed is composed of prefabricated brick panels, most of which measure nine feet by eight feet, eight inches. These panels were hung onto the concrete frame of the building by steel connection bolts and clips. Prefabrication of the panels is accomplished using a chemical product known as Sarabond. Sarabond allegedly has a corrosive property which caused an excessive buildup of rust on the steel hangers. It is claimed that this, together with other factors, caused the difficulties with the brick panels.

Between 1973 and 1982, Knutson was insured under comprehensive general liability (CGL) policies issued by Fire & Marine and U.S. Knutson was also insured under a builders all risk policy issued by Mercury.

The two CGL policies issued by Fire & Marine and U.S. are virtually identical. The policies provide, in pertinent part:

> The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:
>
> Coverage B. Bodily injury; or
>
> \*     \*     \*     \*     \*     \*
>
> Coverage D. Property damage;
>
> to which this Insuring Agreement applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if the

allegations of the suit are groundless, false or fraudulent * * *.

Each policy contains a broad form endorsement including "completed operations hazard." Completed operations hazard is defined as follows:

"Completed Operations Hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. "Operations" include materials, parts or equipment furnished in connection therewith * * *.

Several of the contract exclusions are disputed by the parties. The broad form property damage endorsement contains two exclusions. These exclusions, designated as P. and T. in the Fire & Marine policy and as Y. and Z. in the U.S. policy, provide:

This Insuring Agreement does not apply
 *  *  * . *  *  *

P. To property damage.

(2)(d) [to] That particular part of any property, not on premises owned by or rented to the Insured;

(1) upon which operations are being performed by or on behalf of the Insured at the time of property damage arising out of such operations; or

(2) Out of which any property damage arises; or

(3) The restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured;

T. With respect to the completed operations hazard, to property damage to work performed by the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

While the exclusion set forth in paragraph P. mentions operations performed by or on behalf of the insured, that set forth in paragraph T. referring to completed operations mentions only work performed by the insured.

After oral argument, Knutson moved the court for permission to submit a supplemental brief. That request was denied.

## ISSUES

1. Did the trial court err in granting summary judgment in favor of the two comprehensive general liability insurers, Fire & Marine and U.S.?

2. Did the trial court err in granting summary judgment in favor of the all risk insurer, Mercury?

## ANALYSIS

■ 1. While ordinarily all evidentiary doubts are to be resolved against the party to whom summary judgment has been granted, where the parties have agreed that there is no evidentiary doubt to be resolved, the lower court's determination is to be sustained unless it is without reasonable support in the evidence. *T.E. Ibberson Co. v. American & Foreign Insurance Co.*, 346 N.W.2d 659, 661 (Minn.Ct.App. 1984). Here there is no evidentiary dispute; rather this is a question of contract interpretation.

■ An insurance policy is a contract. The court's function is to analyze the terms of the policy and enforce them to give effect to the intent of the parties. When the terms of the policy are clear and unambiguous, their plain meaning should be given effect. If any of the claims asserted against the insured fall within the scope of coverage, the insurer has a duty to defend. *Id.* at 661 (cites omitted).

Knutson argues that none of the exclusions contained in the three policies apply, and therefore it is insured for the building damage in the Rivergate complex.

The Minnesota Supreme Court has discussed the distinct risk policies underlying construction contracts and comprehensive general liability insurance contracts. *Bor-Son Building Corp. v. Employers Com-*

*mercial Union,* 323 N.W.2d 58 (Minn. 1982).

There, the court stated:

> When it entered into the contracts, Bor-Son assumed certain business risks. Included in those risks was the obligation to construct buildings free from defects and to remedy, on demand, any defects discovered within a year of completion. * * * Any damages to the buildings sustained by HRA because of defective workmanship or materials flowed from the contract documents and the obligations Bor-Son undertook therein. To protect the owner, HRA, from loss resulting from building damage, Bor-Son was required to furnish a performance bond. To protect those who sustained damage to person or property—other than for damages to buildings which were the subject matter of the contract—Bor-Son was required to carry comprehensive general liability insurance. The distinction between a performance bond and a comprehensive general liability insurance policy, in our view, is crucial to the resolution of the issues of this case. * * *

*Bor-Son,* 323 N.W.2d at 61–62.

As the trial court here noted, the essential facts of this case are indistinguishable from those of *Bor-Son.* In both, the general contractor was fully responsible for the construction projects. Both contractors were insured by comprehensive general liability insurance policies, with completed operations coverage.[1]

In its well-reasoned memorandum, the trial court observed that the "facts of this case are indistinguishable from the facts of *Bor-Son;* the language of the comprehensive general liability insurance policies, including the Broad Form endorsements, is the same; the same type of damages are being claimed; and liability is premised upon the same theories of recovery. Therefore, this court must follow the law as set forth in *Bor-Son.*"

In *Bor-Son,* the court concluded that the damages arose out of Bor-Son's breach of contract. The owner did not receive the product—the buildings—for which it had bargained. Its damages resulted, therefore, from faulty workmanship in the performance of the construction contracts. "This liability on the part of the contractor is not within the coverage of the contractor's general liability policy." *Id.* at 63 (citing Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know,* 50 Neb.L.Rev. 415, 441 (1971)).

▇ *Bor-Son* enunciates the policy underlying the two types of contracts, construction contracts and comprehensive general liability contracts. The Minnesota Supreme Court concluded that damages due to faulty workmanship are not covered by a comprehensive general liability policy. *See also T.E. Ibberson Co. v. American & Foreign Insurance Co.,* 346 N.W.2d 659 (Minn. Ct.App.1984), and *Quality Homes, Inc. v. Bituminous- Casualty Corp.,* 355 N.W.2d 746 (Minn.Ct.App.1984), pet. for rev. denied (February 2, 1985). (Policy coverage was denied in both cases.)

Knutson argues that it paid an additional $25,000 for an amended version of the completed operations coverage, which they believed would insure them against faulty work of their subcontractors which appeared after the project was completed. It is difficult to discern exactly what protection was purchased for $25,000. It is also difficult to imagine why Knutson would have purchased completed operations coverage if it did not cover subcontractors' work. However, we must again recognize that the policies we are concerned with here are indistinguishable from those in *Bor-Son.*

Knutson argues that, because the exclusionary clause in paragraph P. of the policy refers to work performed by or on behalf

---

**1.** Although the Minnesota Supreme Court did not specifically address the broad form endorsement with completed operations coverage in *Bor-Son,* the endorsement present there is virtually identical with the broad form endorsement in this case. Further, respondents' Petition for Rehearing in *Bor-Son* specifically alleged that that court had failed to apply the completed operations coverage. The Petition for Rehearing was denied.

of the Insured, and the exclusionary clause in paragraph T. (completed operations) refers only to work performed by the Insured, therefore work by subcontractors must be covered. Respondents reply that the absence of an exclusion does not imply coverage. They also cite the rationale of *Tucker Construction Company v. Michigan Mutual Insurance Company*, 423 So.2d 525 (Fla.App.1982). There the court stated:

> The deletion of the phrase relating to subcontractors in the exclusion in the completed operations policy makes sense because the insured contractor has presumably accepted the subcontractor's work as his own (at least so far as its potential tort liability is concerned), and has turned the completed work over to the owner by the time such a completed operations policy is operative.

> \* \* \* \* \* \*

> The words "work performed by" in this context in the policy mean the same as 'the restaurant constructed by' the insured and was [sic] intended to exclude coverage of the insured's contractual liability for damages to the 'work' caused by the insured's neglect or failure to complete and deliver the completed 'work' in accordance with his contractual undertaking with the owner.

*Id.* at 423 So.2d 528.

The rationale of *Tucker* is consistent with that of the Minnesota Supreme Court in *Bor-Son*.

We reluctantly conclude that it is impossible to distinguish the present case from *Bor-Son*.[2] The dissent invites the Minnesota Supreme Court to review *Bor-Son*. While that court may, in fact, reconsider that holding at some time in the future, we must decide this case at present. *Bor-Son* controls.

■ 2. The Mercury all risk contract also contains an exclusion for faulty work-

manship. Therefore, the trial court's determination that there was no coverage under that policy must be upheld.

## DECISION

The trial court properly granted summary judgment in favor of the two comprehensive liability insurers. The trial court properly granted summary judgment in favor of the all risk insurer.

Affirmed.

FOLEY, J., dissents.

FOLEY, Judge (dissenting).

I respectfully dissent. It is my view that the decision of the Minnesota Supreme Court in *Bor-Son Building Corp. v. Employers Commercial Union*, 323 N.W.2d 58 (Minn.1982), should be reviewed in light of the more recent decision in *Southwest Louisiana Grain, Inc. v. Howard A. Duncan, Inc.*, 438 So.2d 215 (La.App.1983). I further contend *Bor-Son* does not control the decision here.

The present case, like *Bor-Son* and *Louisiana Grain*, involves a denial of coverage where a subcontractor was allegedly negligent in a building construction. Applying *Bor-Son*, the trial court granted summary judgment against the plaintiff construction company. Unlike *Bor-Son*, where all work was subcontracted, here, appellant retained some of the work for itself and subcontracted other work to independent subcontractors.

The insurance policies analyzed in the two cited cases, *Bor-Son* and *Louisiana Grain*, are comprehensive general liability policies (CGL), both of which contain broad form endorsements. The *Bor-Son* decision did not reflect that its analysis involved a broad form endorsement with completed operations coverage, nor did that decision address the various exclusionary provisions. However, in oral argument before

---

**2.** Amicus Curiae noted in its brief that Fire & Marine published a "plain language" CGL policy and Broad Form Property endorsement in 1983. That policy seems to indicate that the broad form endorsement *does* cover damage to any completed work which results from a subcon-

tractor's work. Such an interpretation seems to add yet another disturbing factor to the issues before the court. However, this intrinsic evidence was not before the trial court, and we may not address it here.

this court, counsel stated that *Bor-Son* dealt with a broad form policy. An examination of certain provisions of the policies in question is essential to an understanding of my dissent and recommendation. The two CGL policies issued by St. Paul Fire and U.S. Fire contain virtually identical language.

The main body of both CGL policies contains two exclusions, one for property damage to operations in progress, the other for property damage for completed operations. The exclusion covering completed operations (clause T.) contains the following language:

> T. to property damage to *work performed by or on behalf of* the Named insured arising out of the work or any portion thereof; or out of materials, parts or equipment furnished in connection therewith; * * *

(Emphasis added).

For an additional annual premium of approximately $25,000.00, appellant purchased the broad form endorsement with completed operations coverage. This policy replaces the exclusion language in clause T. with the following:

> With respect to the completed operations hazard, to property damage to *work performed by the Named insured* arising out of the work or any portion thereof, or out of the materials, parts or equipment furnished in connection therewith.

(Emphasis added).

The substitute provision was in force at all material times. The CGL exclusion and its substitute under the broad form endorsement are virtually identical to the clauses contained in the insurance policy in the *Louisiana Grain* case. There the exclusion clause in the general CGL policy stated:

> [W]ith respect to completed operations hazard, to property damage to *work performed by or on behalf of the named insured* arising out of work or any portion thereof, or out of the materials, parts or equipment furnished in connection therewith.

(Emphasis added). The above exclusion was replaced in the broad form policy by the following:

> [W]ith respect to the completed operations hazard, to property damage to *work performed by the named insured* arising out of the work, or any portion thereof, or out of the materials, parts or equipment furnished in connection therewith.

*Louisiana Grain,* 438 So.2d at 221 (emphasis added). In addressing the claimed exclusion of coverage with respect to conduct of a subcontractor, the Louisiana Court of Appeals concluded: "the substitute clause in the broad form does not exclude coverage for property damage to work performed on behalf of the named insured arising out of the work." *Id.* at 223.

Here, it is significant that there was a substitute clause incorporated into the insurance contract when the appellant purchased broad form property damage coverage, including completed operations, for an additional $25,000.00 annual premium. To reiterate, the exclusion in pertinent part reads: "work performed by the named insured." Again, this substitution replaces the CGL general exclusion which read in pertinent part: "work performed by *or on behalf of* the named insured." (Emphasis added).

Noting the different language in the two clauses, the Louisiana Court of Appeals said: "One seems to exclude work performed by both the insured and subcontractors. The other appears to exclude only work performed by the insured, thus indicating coverage of subcontractors." *Id.* at 222. Either the substituted clause excludes only work performed by the named insured, or it creates an ambiguity.

In general, while contractors do assume certain business risks (*Bor-Son* ), where a policy is ambiguous with respect to coverage, the Louisiana court concluded, "[s]uch an ambiguity would be construed in favor of the insured." *Id.* This language is consistent with Minnesota law on the construction of insurance contracts. *Nordby v. At-*

*lantic Mut. Ins. Co.*, 329 N.W.2d 820, 822 (Minn.1983); *Columbia Heights Motors, Inc. v. Allstate Ins. Co.*, 275 N.W.2d 32, 34 (Minn.1979); *Farmers and Merchants State Bank of Pierz v. St. Paul Fire & Marine Ins. Co.*, 309 Minn. 14, 18, 242 N.W.2d 840, 842 (1976). Also significant to the decision here is the fact that "the property is realty, a factor favoring coverage. * * * Only rarely has the exclusion been applied to realty * * *." *Ohio Cas. Ins. Co. v. Terrace Enterprises, Inc.*, 260 N.W.2d 450, 453–54 (1977) (reg'g denied Jan. 4, 1978).

Because *Bor-Son* does not address the language discrepancy when a broad form policy exclusion replaces a different exclusion in a CGL policy, and because I believe there is an ambiguity which should be construed in favor of the insured, I, therefore, dissent.