**T.E. IBBERSON COMPANY, Appellant,**

v.

**AMERICAN & FOREIGN INSURANCE COMPANY, Respondent.**

No. C2–83–1780.

Court of Appeals of Minnesota.

March 21, 1984.

W. Scott Herzog, Dale M. Wagner, Minneapolis, for appellant.

Jerome R. Klukas, Mary J. Marvin, Minneapolis, for respondent.

Considered and decided by FOLEY, P.J., and WOZNIAK and SEDGWICK, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

This is an appeal from a declaratory judgment determining that exclusions in a comprehensive general liability insurance

policy issued by American & Foreign Insurance to appellant, T.E. Ibberson Co., preclude coverage for loss of use claims. The damages claimed arose from an earlier action in which it was alleged Ibberson's negligent construction of a grain elevator resulted in the loss of the elevator's use to its owners. We affirm.

## FACTS

T.E. Ibberson Company (TEI) is a Minnesota corporation engaged in the business of building concrete grain elevators. Its work is insured by American & Foreign Insurance Company under a comprehensive general liability policy. This policy includes what are commonly known as work product exclusions. Pertinent provisions of the policy and the exclusions read as follows:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such ... property damage, even if any of the allegations of the suit are groundless, false or fraudulent, ... 'property damage' means (1) physical injury to or destruction of tangible property which occurs during the policy period, *including the loss of use thereof* at any time resulting therefrom or (2) loss of use of tangible property which has not been physically injured or destroyed providing such loss of use is caused by an occurrence during the policy period.

(Emphasis supplied.)

This insurance does not apply—

(n) to property damage to the named insured's product arising out of such products or any part of such product;

(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(p) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's product or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected deficiency therein.

In 1968, TEI completed an elevator for Farmers Elevator Cooperative, an Iowa corporation. In 1980, Farmers hired the Ken Bratney Company to install grain dryers in the elevator. This required Bratney to punch holes in the concrete walls. Soon after installation of the dryers, cracks and bulges began to appear around the holes due to structural defects in the walls caused by TEI's negligence. These defects forced Farmers to close the elevator for an extended period of time to repair the cracks and reinstall the dryers.

In 1981, Farmers sued TEI in Iowa, alleging negligent work by TEI had caused the failure of its elevator. Farmers claimed damages for repair costs, lost profits, and loss of use of the elevator. TEI filed a claim, requesting American to defend them in the negligence action. After investigation, American refused to defend, claiming the policy's work product exclusions relieved them of any such duty. TEI then filed a declaratory judgment action in Minnesota to establish American's duty to defend. For the purposes of the action, TEI admitted that only the loss of use claim was at issue.

On cross motions for summary judgment, the trial court granted American's motion, finding that the work product exclusions negated loss of use claims from coverage under the language of the policy. The trial court held American had no duty to defend TEI. We affirm.

## ISSUE

Do the work-product exclusions in the comprehensive general liability insurance

policy negate the insurer's duty to defend their insured against claims for loss of use arising out of an action alleging damages for negligent work on the part of the insured?

## ANALYSIS

The narrow issue before this court is whether Farmer's loss of use of the elevator, TEI's work and product, is a claim covered under the insurance contract. Both parties agree that there are no disputed issues of fact.

■ While ordinarily all evidentiary doubts are to be resolved against the party to whom summary judgment has been granted, where the parties have agreed that there is no evidentiary doubt to be resolved, the lower court's determination is to be sustained unless it is without reasonable support in the evidence. *See Telex Corp. v. Data Prods. Corp.*, 271 Minn. 288, 291, 135 N.W.2d 681, 685 (1965).

■ An insurance policy is a contract. The court's function is to analyze the terms of the policy and enforce them in such a manner as gives effect to the intentions of the parties. When the terms of the policy are clear and unambiguous, their plain meaning should be given effect. *Gabrelcik v. National Indem. Co.*, 269 Minn. 445, 447, 131 N.W.2d 534, 536 (1964). If any of the claims asserted against the insured fall within the scope of coverage, the insurer has a duty to defend. *Prahm v. Rupp Constr. Co.*, 277 N.W.2d 389, 390 (Minn. 1979).

■ Work product exclusions, generally found in comprehensive liability insurance policies, are intended to deny coverage to the insured when the insured's own negligence gives rise to the damage. While one can purchase insurance that will protect a party from its own mistakes, such general liability policies as this do not serve that purpose.

The policy definition of "property damage" includes "... loss of use thereof ...." TEI admits that the elevator was solely its work and its product.

Exclusion (n) applies to exclude coverage for property damage (including, by definition, claims of loss of use) to TEI's product.

Exclusion (*o*) applies to exclude coverage for property damage (including, by definition, claims of loss of use) to work performed by TEI or out of materials, parts or equipment furnished by TEI.

Exclusion (p) excludes coverage for damages claimed for the loss of use of TEI's products or work if they are withdrawn from use because of any known or suspected defect or deficiency.

The trial court based its decision upon the applicability of exclusions (n) and (*o*), "the work-product exclusions." The trial court stated:

> There is no question but that the elevator here was the product or work of TEI, nor that the claimed negligence is defectively constructing it. This is exactly the situation the exclusions were intended to cover, and AFI is entitled to rely on them.

When TEI entered into its contract to design and construct the concrete grain elevator, it assumed certain business risks. Primarily, it assumed the business risk that it might fail to live up to its contractual obligations to perform its work in a good, substantial and workmanlike manner, and to provide an acceptable end product. To protect Farmers and to insure the quality of its work and product, TEI was required to furnish a performance bond. To protect those who might sustain bodily injury or damage to other property, TEI obtained insurance coverage of the type at issue herein, i.e., a comprehensive general liability (CGL) insurance.

■ In *Bor-Son Bldg. Corp. v. Employers Commercial Union Ins. Co.*, 323 N.W.2d 58 (Minn.1982), the distinction between a performance bond and a CGL policy was crucial and applicable to this case.

It is clear that all the damages claimed by HRA arose out of Bor-Son's breach of contract. HRA had not received the product—the buildings—for which it had bargained. Its damages resulted from

faulty workmanship in the performance of the contracts. This liability on the part of the contractor is not within the coverage of the contractor's general liability policy.

*Id.* at 63. The allegations in this action, if proved, involve damage to TEI's own work and product arising from its breach of contract. American had no duty to defend against such claims. Damages for faulty workmanship are not within the coverage of the contractor's general liability policy.

The *Bor-Son* court further clarified the basis for its holding:

> The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damage to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

*Id.* at 63 (quoting Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know*, 50 Neb.L.Rev. 415, 441 (1971)).

By foregoing any claim based on the cost of repairs, loss of profits, or loss of storage capacity, TEI appears to recognize this distinction. However, it maintains that Farmer's claim for the loss of use of TEI's product is covered under the policy, citing *Ohio Casualty Insurance Co. v. Terrace Enterprises*, 260 N.W.2d 450 (Minn.1970).

Analysis of this decision establishes that TEI's arguments are unsupported. In *Ohio Casualty*, the insured (Doerfler Construction) sought a declaration that its comprehensive general liability policy provided coverage for damages arising from faulty construction of an apartment building. Doerfler had been found liable in the main action for damages caused by its negligent laying of footings and for loss of profit damages for a three-month delay in opening the building for occupancy. The insurance policy contained an exclusion similar to (*o*) herein, commonly referred to as a "work" exclusion. The court held that this exclusion did not preclude coverage for the diminished value of the building because the *entire building* was not the insured's work:

> The controversy here centers on ... whether the property damaged was work performed by Doerfler Construction .... The building as a whole was not the work performed by the insured, and thus the damage to it as a whole is not excluded by clause (m).

*Ohio Casualty* at 454–5. The holding compels the opposite conclusion that, had the building as a whole been the work or product of the insured, damage to it was excluded by the work-product exclusions.

It is factually undisputed that the grain elevator was wholly the work and product of TEI. This is not a "component product" situation as in *Ohio Casualty*.

Looking to another jurisdiction, the Texas court, when presented with a factual situation identical to this case, held that where a purchaser of a concrete grain storage elevator made a claim against the manufacturer not for damages to grain stored in the elevator, but rather for lost storage revenue, this loss of use of the elevator was merely an element of the damage to the elevator itself and thus came within the provision of the manufacturer's liability policy excluding coverage for injury or destruction of any goods manufactured or sold or work completed by the named insured out of which the accident arose.

*Employers Casualty Company v. Brown-McKee, Inc.,* 430 S.W.2d 21, 25 (Tex.1968).

The Texas court analyzed other decisions construing identical exclusions holding:

> This liability policy clearly was designed to indemnify the insured against damage to other property or parties. It was not intended to cover his property or work completed by the insured ....

> Employers, under its policy, is not liable for any failure on the part of Brown-McKee to perform their contract with Panhandle in a workmanlike manner or Brown-McKee's failure to properly repair said alleged defects in the elevator. The insurance issued by Employers was a liability policy, not a builder's risk policy.

*Id.*

Since we have reached a decision based upon the language of the exclusions, we find it unnecessary to reach the issue of whether the damage was caused by an "occurrence," as defined in the policy. The exclusions in the policy relied upon by American that it had no duty to defend TEI against any claim in the main action are clear and unambiguous and supported by court decisions previously cited.

### DECISION

Construction of the elevator was solely the work and product of the insured. Negligence of the insured in construction, giving rise to the claim of loss of use, is excluded by the work product exclusions of the insurance policy. The insurance company has no duty to defend the insured.

We affirm.