QUALITY HOMES, INC., Respondent,

v.

BITUMINOUS CASUALTY CORPORATION, Respondent,

Globe Indemnity Company, et al., Defendants,

Transamerica Insurance Company, Appellant,

Homes Insurance Company, Respondent,

Fireman's Fund Insurance Company, Defendant.

No. C5-84-911.

Court of Appeals of Minnesota.

Oct. 2, 1984.

Gerald L. Svoboda, St. Paul, for Quality Homes, Inc.

John H. Guthmann, Hansen, Dordell, Bradt, Odlaug & Bradt, St. Paul, for Bituminous Casualty Corporation.

Phillip D. Nelson, St. Paul, for Transamerica Insurance Company.

Lawrence J. Skoglund, Bloomington, for Homes Insurance Company.

Mary A. Rice, St. Paul, for Fireman's Fund Insurance Company.

Considered and decided by HUSPENI, P.J., and NIERENGARTEN and RANDALL, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

Appellant Transamerica Insurance Co. appeals from the trial court's order requiring Transamerica to indemnify respondent Quality Homes for loss of use damages Quality became liable for in an earlier action, costs and attorneys fees incurred in defending Quality Homes in that action, and costs and attorneys fees in the present declaratory judgment action. Quality Homes appeals from that part of the trial court's order which denies complete indemnification for all sums Quality became liable for in the earlier action. We affirm in part and reverse in part.

## FACTS

Quality Homes built a house in 1970 on land it owned in Shoreview, Minnesota. Quality later sold the house to the O'Neill family who, in 1971, complained to Quality of water problems, cracking walls and basement settling. In September 1973, the O'Neills sold the house to the Moore family who, in April 1976, sold to the Harbours family.

In the summer of 1976, the Harbours also complained of severe water leakage and settling in the basement. In October, Quality Homes hired Twin City Testing to conduct soil sample borings. Twin City concluded the damage to the house was caused by inadequate support apparently

due to an unknown peat deposit underneath the foundation. All site preparation work and construction of the foundation was done by a contractor other than Quality Homes.

In early 1978, the Harbours commenced a suit against, among others, Quality Homes for negligent construction of the house. Quality Homes' work was insured by appellant Transamerica Insurance Co. under a comprehensive general liability (CGL) policy issued in April 1976, which contains a work product exclusion. The policy provides in pertinent part as follows:

> The company will pay on behalf of the *insured* all sums which the insured shall become legally obligated to pay as damages because of * * * *property damage* to which this insurance applies, caused by an *occurrence.* The company shall have the right and duty to defend any suit against the *insured* seeking damages on account of such * * * *property damage,* even if any of the allegations of the suit are groundless, false or fraudulent * * *.
>
> This insurance does not apply:
>
> (d) to *property damage* * * * (5) to premises alienated by the *named insured* arising out of such premises or any part thereof; (6) to the *named insured's products* arising out of such products or any part of such products; (7) to work performed by the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.
>
> * * * * * *
>
> *"named insured's products"* means goods or products manufactured, sold, handled or distributed by the *named insured* or by others trading under his name, including any container thereof (other than a vehicle), but *"named insured's products"* shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;
>
> * * * * * *

> *"property damage"* means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an *occurrence* during the policy period * *.

Quality Homes was also insured by Transamerica with "completed operations coverage ('completed operations')" which provides coverage for projects already completed. Transamerica refused to defend Quality. Quality Homes was found negligent and in breach of an implied warranty in the construction of the house. The jury awarded the Harbours $53,500.00 for "out-of-pocket costs," $1,472.00 for "expenses reasonably incurred" and $12,600.00 for loss of use.

Quality then filed a declaratory judgment action seeking indemnification from Transamerica for the above damages and attorneys fees in that action, as well as in this action, claiming that Transamerica, as insurer on the comprehensive general liability insurance policy, had the duty to defend and indemnify it in the *Harbour* action. Quality also commenced suit against several other insurance companies.

On January 20, 1984, the trial court granted motions for summary judgment on behalf of Bituminous Casualty Corporation, Home Insurance Co. and Fireman's Fund Insurance Co. These parties are not involved with this appeal. The trial court granted Quality Homes' motion for summary judgment against Transamerica holding that Transamerica was liable for the amount of the damages ($12,600) for the loss of use of the house in the *Harbour* action and the reasonable costs and attorneys fees of Quality in defending the *Harbour* action.

The trial court later amended its earlier order by allowing Quality Homes reasonable costs and attorneys fees in prosecuting the instant action against Transamerica. The court retained jurisdiction to de-

termine the amount of those fees and costs and subsequently ordered judgment against Transamerica for $58,712.20, representing the reasonable amount of attorneys fees and costs in defending the *Harbour* action and in prosecuting the present action. Both Quality Homes and Transamerica appealed. Quality alleges its completed operations endorsement provided complete indemnification for legal fees and all damages paid by Quality. Transamerica simply claims there was not coverage.

### ISSUES

1. Does the work product exclusion in a comprehensive general liability insurance policy exclude coverage of the claims for property damage to the insured's work?

2. Does a completed operations coverage endorsement provide coverage for property damage to the insured's work?

### ANALYSIS

#### I

In Minnesota,

[a]n insurance policy is a contract. The court's function is to analyze the terms of the policy and enforce them in such a manner as gives effect to the intentions of the parties. When the terms of the policy are clear and unambiguous, their plain meaning should be given effect. * * * If any of the claims asserted against the insured fall within the scope of coverage, the insurer has a duty to defend.

*T.E. Ibberson Co. v. American & Foreign Insurance Co.*, 346 N.W.2d 659, 661 (Minn. App.1984) (citations omitted).

It is not disputed that the damage to the house was an "occurrence" within the meaning of the Transamerica policy. *See Ohio Casualty Insurance Co. v. Terrace Enterprises, Inc.*, 260 N.W.2d 450, 452–53 (Minn.1978).

 Quality Homes argues that the insurance policy issued by Transamerica requires Transamerica to completely indemnify Quality for the attorneys fees and all damages paid by Quality to the Harbours in the underlying action. This argument is without merit.

The trial court relied on *Bor-Son Building Corp. v. Employers Commercial Union Ins. Co.*, 323 N.W.2d 58 (Minn.1982), in denying indemnification for $53,500.00 in out-of-pocket costs and $1,472.00 for expenses reasonably incurred. We agree. A comprehensive general liability policy, such as the one issued in this case, is not intended to cover damage to the work product of the insured. In *Bor-Son*, the supreme court stated:

It is clear that all the damages claimed by HRA arose out of Bor-Son's breach of contract. HRA had not received the product—the buildings—for which it had bargained. Its damages resulted from faulty workmanship in the performance of the contracts. This liability on the part of the contractor is not within the coverage of the contractor's general liability policy.

*Id.* at 63. The court also stated:

The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damage to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

*Id.* (quoting Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer*

*Should Know,* 50 Neb.L.Rev. 415, 441 (1971)).

The partial indemnification granted by the trial court for loss of use, however, was improper. In *T.E. Ibberson Co. v. American & Foreign Ins. Co.,* 346 N.W.2d 659 (Minn.App.1984), this court held that the exclusions in a comprehensive general liability insurance policy preclude coverage for loss of use claims. "Damages for faulty workmanship are not within the coverage of the contractor's general liability policy." *Id.* at 662. The loss of use of the home was merely an element of the damage to the home itself and is excluded by the work product exclusions of the insurance policy. *Id.*

## II

■ In addition to its comprehensive general liability coverage, Quality Homes purchased "completed operations coverage." This additional endorsement provided coverage for projects Quality Homes had completed. It provides:

> *"completed operations hazard"* includes *bodily injury* and *property damage* arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the *named insured.* "Operations" include materials, parts or equipment furnished in connection therewith. * * *
>
> \* \* \* \* \* \*
>
> The *completed operations hazard* does not include *bodily injury* or *property damage* arising out of
>
> (a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,
>
> (b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

> (c) operations for which the classification stated in the policy or in the company's manual specifies "including completed operations" * * *.

Quality Homes asserts that its completed operations endorsement provides complete indemnification for attorneys fees and all damages paid by Quality to the Harbours in the underlying action. In interpreting this language, Quality argues that it has coverage for property damage if it arises out of a completed project, occurs away from property owned or rented by Quality and is not excluded by one of the three specified exclusions. This argument is without merit.

The ninth circuit was faced with an almost identical situation in *Southwest Forest Industries, Inc. v. Pole Buildings, Inc.,* 478 F.2d 185 (9th Cir.1973). In construing a policy which contained completed operations coverage along with work product exclusions, the ninth circuit stated:

> When considered with * * * [the work product exclusion], the completed operations coverage would be limited only to the extent that damage to the insured's completed work would not fall within the coverage of the policy. The risk of *damage to persons or property other than that constructed by the insured would remain with the insurer.*

*Id.* at 187 (emphasis added); *see also Fresard v. Michigan Millers Mutual Insurance Co.,* 414 Mich. 686, 702, 327 N.W.2d 286, 292 (Mich.1982). Because Southwest's sole claim was for damages to the building itself and not for injury to persons or other property, the ninth circuit held that the work product exclusion applied to release the insurance company from liability. 478 F.2d at 188.

## DECISION

Since all parts of the *Harbour* cause of action against Quality Homes clearly fall outside the scope of coverage, Transamerica had no duty to indemnify or defend Quality. Likewise, because Transamerica did not wrongfully refuse to defend, the

award of attorneys fees and costs in the underlying action, as well as in this action, was improper.

Affirmed in part, reversed in part.