ATLANTIC MUTUAL INSURANCE
COMPANY, Respondent,

v.

The JUDD COMPANY, Appellant,

Harris Mechanical Contracting Company, The Central Foundry Company, Respondents.

No. C4–84–1595.

Court of Appeals of Minnesota.

May 14, 1985.
Review Granted July 26, 1985.

Douglas R. Archibald, Cosgrove & Hanson, Minneapolis, for respondent Atlantic Mut. Ins. Co.

Ronald E. Martell, David A. Kastelic, Moore, Costello & Hart, St. Paul, for appellant.

Heard, considered and decided by LANSING, P.J., and PARKER and NIERENGARTEN, J.

## OPINION

LANSING, Presiding Judge.

Appellant Judd Co. appeals from a declaratory judgment determining, under stipulated facts, that its policy of comprehensive general liability insurance with respondent Atlantic Mutual Insurance Co. excludes damages claimed in a lawsuit brought against Judd by a third party. The court also determined that Atlantic Mutual nonetheless has a duty to defend Judd. Atlantic Mutual cross-appeals on that issue. We affirm in part and reverse in part.

## FACTS

In January 1980 the Judd Co., a wholesaler of plumbing and heating supplies, entered into a contract with the Harris Mechanical Contracting Co., the plumbing and heating contractor for a construction project in Austin, Minnesota. Judd agreed to furnish Harris with soil pipe and fittings for the underground sewage system. It ordered the pipes and fittings from the Central Foundry Co.

After Harris had installed a number of the soil pipes and fittings, tests were performed to determine whether the pipes would withstand the pressure required of the sewage system. The testing revealed that some of the fittings leaked and that some of the pipes had hairline cracks. Although Central supplied Harris with new pipes and fittings at no additional charge, Harris spent about $116,000 repairing and replacing the pipe.

In August 1981 Harris commenced a lawsuit against Central and Judd for the expense incurred in replacing the defective pipes and fittings. Harris pleaded negligence and breach of express and implied warranties. The parties, in a stipulation prepared for purposes of this action, characterized the claimed damages as follows:

(a) Employee time locating leaks;
(b) Machine and labor time uncovering the defective pipes;
(c) Machine and labor time removing the defective pipes;
(d) Employee time repairing and retarring the pipes;
(e) Labor and machine time redigging trenches and reinstalling pipe; and
(f) Labor time retesting the new pipe system.

Judd was covered under a policy of comprehensive general liability insurance issued by Atlantic Mutual. The policy coverage clause provides:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and dúty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent * * *.

Property damage is defined as:

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period * * *.

An occurrence is defined as:

an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured * * *.

In addition, the policy contained the following exclusions:

This insurance does not apply:

(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;

\* \* \* \* \* \*

(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from

(1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or

(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured * * *;

(n) to property damage to the named insured's products arising out of such products or any part of such products;

(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(p) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein * * *.

Judd tendered defense of the lawsuit to Atlantic Mutual, which provided Judd with a lawyer but reserved the right to contest coverage under the policy. Atlantic Mutual later brought this declaratory judgment action, seeking a judicial determination that the damages sought by Harris were excluded from coverage. The parties stipulated that the pipes and fittings supplied by Judd were the "named insured's [i.e., Judd's] products" within the meaning of the exclusion clauses.

The trial court found there was no coverage based on exclusion (p), which excludes coverage for repair and replacement damages if products are withdrawn from the market. The court nonetheless found that Atlantic Mutual had a duty to defend Judd in the main action and awarded Judd attorney's fees for its defense of the declaratory judgment action. Judd appealed the finding of no coverage, and Atlantic Mutual cross-appealed the issue of its duty to defend and the award of attorney's fees.

### ISSUES

1. Do the exclusions upon which Atlantic Mutual relies operate to exclude coverage for Harris' claims of damage resulting from the defective pipes?

2. Must Atlantic Mutual reimburse Judd for attorney's fees and costs incurred

in defending this declaratory judgment action?

## ANALYSIS

### I

■ Because Central provided new pipe and fittings to Harris at no additional charge, Harris makes no claim against Judd for the cost of the new pipe, but alleges damages exclusively for extra expense incurred because of the defects. Although the record is not clear, it appears that the largest portion of the claimed damage is due to employee time spent locating and repairing the pipe. Another substantial portion is due to the "idle time" or "down time" of Harris' subcontractor awaiting completion of the repairs. Some portion of the damages is due to the cost of uncovering and backfilling the ground where the pipe was originally placed.

Atlantic Mutual does not argue that Harris' claim falls outside the policy's coverage clause, but alleged in it's complaint that exclusions (m), (n), (o), and (p) exclude coverage.[1] At trial and on appeal, however, Atlantic Mutual relied solely on exclusions (m) and (p). Atlantic Mutual did not argue the applicability of exclusions (n) and (o), commonly called the "work product" exclusions, apparently because no claims are made for damage to the pipe itself. *See generally Quality Homes, Inc. v. Bituminous Casualty Corp.*, 355 N.W.2d 746, 749–50 (Minn.Ct.App.1984); *T.E. Ibberson Co. v. American & Foreign Insurance Co.*, 346 N.W.2d 659, 661 (Minn.Ct.App. 1984).

Exclusion (p), on which the trial court based its decision, precludes coverage of losses based on the withdrawal from the market of a product which is expected to be or found to be defective. This exclusion, commonly called the "sistership" exclusion, excludes from coverage damages claimed when a product is "temporarily or permanently withdrawn from the market because of occurrences involving the same or similar product." *Ohio Casualty Insurance Co. v. Terrace Enterprises, Inc.*, 260 N.W.2d 450, 455 (Minn.1977) (quoting 2 R. Long, *Law of Liability Insurance*, App. § 15 (1966)). The pipes supplied to Harris were not withdrawn from the market because of a suspected defect or a defect found in other pipes. Therefore, exclusion (p) is inapplicable. *See id.*

Exclusion (m) excludes coverage for certain claims of lost use of tangible property that would otherwise fall within the definition of property damage. Atlantic Mutual characterizes that part of Harris' claim due to "idle time" as a loss of use claim excluded by exclusion (m). Judd, on the other hand, characterizes this claim as damages for delay in construction, apparently on the theory that delay damages are a consequence of the original property damage. We reject Atlantic Mutual's characterization because the "idle time" of Harris' subcontractor is not "loss of use" of tangible property as that phrase has been interpreted. *See* Note,·*Liability Coverage for "Damages Because of Property Damage" under the Comprehensive General Liability Policy*, 68 Minn.L.Rev. 795, 804–05 (1984); *see also Federated Mutual Insurance Co. v. Concrete Units, Inc.*, 363 N.W.2d 751 (Minn.1985) (grain elevator incapable of use due to construction delays caused by defective concrete was lost use of tangible property); *American Motorists Insurance Co. v. Trane Co.*, 544 F.Supp. 669 (W.D.Wis.1982) (lost use of tangible property occurred when defective heat exchangers installed in a plant diminished the productivity of the plant). Therefore, Atlantic Mutual may not rely on exclusion (m) to deny coverage. We cannot accept or reject Judd's characterization that idle time is an item of consequential damage because

---

1. The parties requested only that the trial court address the effect of the policy exclusions. They do not raise the coverage issue of whether the claims asserted by Harris are based on or causally related to property damage, as that term is defined in the policy. *See Federated* *Mutual Insurance Co. v. Concrete Units, Inc.*, 363 N.W.2d 751 (Minn.1985). The state of the record on appeal does not permit us to conclude that Atlantic Mutual has conceded the coverage issue.

the parties have not litigated or stipulated to the "property damage" from which these "consequential damages" are said to flow.

■ Judd further contends that the exception to exclusion (a) for "a warranty of fitness or quality" grants coverage for all breach of warranty claims because it conflicts with exclusions (n) and (o) and creates an ambiguity. Exclusion (a) denies coverage when the insured, in a contract with a third party, agrees to save harmless or indemnify the third party. *See* 12 G. Couch, *Couch Cyclopedia of Insurance Law* 55 (rev.2d ed.1981). The exception to exclusion (a) removes from the exclusion any warranty liability the insured assumes in the indemnification agreement. *See, e.g., General Casualty Co. of Wisconsin v. Larson,* 196 F.2d 170, 174 (8th Cir.1952). Whether warranty liability is assumed by an indemnification agreement or imposed by law, coverage under this policy depends on whether the claimed damage flows from "bodily injury" or "property damage" as the policy defines those terms. Exclusions (n) and (o) unambiguously qualify the definition of "property damage" by excluding damage to the named insured's products. We cannot say that the policy as a whole is ambiguous so as to render the exception a grant of coverage for warranty claims based on Judd's products. *See Moorhead Machinery and Boiler Co. v. Employers Commercial Union Insurance Co. of America,* 285 N.W.2d 465, 468 (Minn.1979).

We do not hold, however, that, because the exclusions are inapplicable, the policy provides coverage for the damages Harris claims. That determination turns on whether the claimed damages are based on or causally related to property damage as it is defined in the policy. *See, e.g., Federated Mutual Insurance Co. v. Concrete Units, Inc.,* 363 N.W.2d 751 (Minn.1985). Those issues were not briefed or argued before the trial court or this court. The scope of this opinion is necessarily limited by the piecemeal litigation below.

■ The trial court ruled that Atlantic Mutual has a duty to defend Judd, and we agree. An insurer seeking to avoid defense of an insured carries the burden of demonstrating that all parts of the cause of action against the insured fall clearly outside the scope of coverage. *Bituminous Casualty Corp. v. Bartlett,* 307 Minn. 72, 240 N.W.2d 310, 312 (1976); *see also Prahm v. Rupp Construction Co.,* 277 N.W.2d 389, 390 (Minn.1979). Atlantic Mutual has not demonstrated that all parts of the cause of action against Judd fall clearly outside the scope of coverage. Therefore, Atlantic Mutual has a duty to defend Judd.

## II

■ The trial court determined that Atlantic Mutual was required to pay attorney's fees and costs incurred by Judd to defend this declaratory judgment action. In the absence of contractual or statutory authorization, attorney's fees are generally not allowed. *See Grain Dealers Mutual Insurance Co. v. Cady,* 318 N.W.2d 247, 251 n. 10 (Minn.1982).

■ Judd's insurance policy provided that Atlantic Mutual would pay "reasonable expenses incurred by the insured *at the company's request* in assisting the company in the investigation of any claim or suit * * *" (emphasis supplied). This language is similar to the policy language in *Security Mutual Casualty Co. v. Luthi,* 303 Minn. 161, 169–71, 226 N.W.2d 878, 883–85 (1975), where the court held that defense of a declaratory judgment action was "at the company's request," thus authorizing payment of attorney's fees. *See also Ohio Casualty,* 260 N.W.2d at 455–56. Because Atlantic Mutual has not established that all parts of the action against Judd fall outside the policy's coverage, we affirm the trial court's award of $8,500 in attorney's fees.

## DECISION

The trial court erred in concluding that the "sistership" exclusion in a comprehensive general liability policy excludes coverage.

Atlantic Mutual owes Judd a duty to defend in the main action because it has not established that all parts of the action against Judd fall clearly outside the scope of coverage. We affirm the trial court's award of $8,500 in attorney's fees.

Affirmed in part and reversed in part.